**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

PRIMERICA LIFE INSURANCE
COMPANY,

                              Plaintiff,

          v.                                                    1:21-cv-0705 (AMN/CFH)

SANDRA ELLA WILLIAMSON, TONYA
DAY-JEFFERSON, SHAREE H. FITZGERALD,
and BRITTANY HUBBARD,

                              Defendants.

---

TONYA DAY-JEFFERSON, SHAREE H.
FITZGERALD, and BRITTANY HUBBARD,

                              Cross-Claimants,

          v.

SANDRA ELLA WILLIAMSON,

                              Cross-Defendant.

---

**APPEARANCES:**                              **OF COUNSEL:**

**DETRAGLIA LAW OFFICE**                       **MICHELE E. DETRAGLIA, ESQ.**
1425 Genesee Street
Utica, New York 13501
*Attorneys for Cross-Claimants*

**WEMPLE & DALY ATTORNEYS**                    **JAMES S. DALY, ESQ.**
26 F Congress Street #278
Saratoga Springs, New York 12866
*Attorneys for Cross-Defendant*


**Hon. Anne M. Nardacci, United States District Judge:**

MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Primerica Life Insurance Company ("Primerica") brought this interpleader action under 28 U.S.C. § 1335, seeking its discharge from all liability in connection with a life insurance policy that it issued to Warren A. Jefferson (the "Decedent") in 1995 (the "Policy").  Dkt. No. 1 (the "Complaint").  Following Decedent's death in 2020, four parties asserted entitlement to all or part of the Policy's proceeds: Decedent's ex-wife, Tonya Day-Jefferson; Decedent's daughters, Sharee H. Fitzgerald and Brittany Hubbard (together, the "Cross-Claimants"); and Sandra Ella Williamson (the "Cross-Defendant").  Cross-Defendant claims entitlement to the entirety of the Policy's proceeds as the Policy's sole beneficiary.  Cross-Claimants claim that Cross-Defendant obtained her beneficiary designation by forging Decedent's signature, thus committing fraud under New York law, and as a result the Policy's proceeds are rightfully theirs under the last authentic designation.  The Court terminated Primerica from the action on December 9, 2021.  Dkt. No. 27. Presently before the Court is Cross-Claimants' motion for summary judgment on the cross-claim of fraud against Cross-Defendant.  Dkt. No. 55 (the "Motion").  Cross-Defendant filed an Opposition to the Motion, Dkt. No. 62 (the "Opposition"), and Cross-Claimants filed a Reply in support of the Motion, Dkt. No. 65 (the "Reply").

For the reasons set forth herein, the Motion is denied.

## II.    BACKGROUND

### A.    Factual Background[1]

While a resident of Virginia, Decedent applied for and was issued the Policy with an effective date of February 28, 1995, which provided $150,000 in coverage.  Dkt. No. 1 ¶ 9; Dkt.

---

[1] The following facts are essentially unchanged from the Court's Order on the previous summary judgment motions, Dkt. No. 30 at 2-3, as the parties have not asserted new facts in their Statements

No. 1-1.  In the original application for the Policy, Decedent designated Day-Jefferson, his then-wife, as sole primary beneficiary of the Policy's $150,000 death benefit (the "Death Benefit"). Dkt. No. 1 ¶ 10.  Nearly twenty-three years later, on September 13, 2017, Decedent designated the following individuals as co-primary beneficiaries in the amounts indicated: (a) Day-Jefferson, wife, $100,000; (b) Fitzgerald, daughter, $25,000; and (c) Hubbard, daughter, $25,000.  *Id.* ¶ 11; Dkt. No. 1-2.  Day-Jefferson and Decedent divorced on July 2, 2018.  *Id.* ¶ 12.

Primerica received a Multipurpose Change Form dated April 26, 2019, in which Decedent designated Williamson, who was identified as his "caregiver," as sole primary beneficiary of the Death Benefit.  *Id.* ¶ 13; Dkt. No. 1-3 (the "MCF").  Williamson "help[ed] [Decedent] complete the top portion of the form[.]"  Dkt. No. 9 ¶ 21; Dkt. No. 19 ¶ 13.  Decedent's ongoing "battle with Multiple Sclerosis" did not "change" his signature from at least September 2017 through February 2020, Dkt. No. 19 ¶ 58 (citing Dkt. No. 9 ¶ 20), but Cross-Claimants dispute whether Decedent actually "signed and turned the [MCF] into Primerica."  Dkt. No. 9 ¶ 21; Dkt. No. 19 ¶ 59. Decedent died on December 15, 2020.  Dkt. No. 1 ¶ 14; Dkt. No. 1-4.  As a result of his death, the Death Benefit became due to the beneficiary or beneficiaries entitled to receive it.  Dkt. No. 1 ¶ 15.  By letter dated December 28, 2020, faxed to Primerica the following day, Hubbard contested the validity of the MCF, alleging that the document was fraudulently completed.  *Id.* ¶ 16; Dkt. No. 1-5.  One week later, on January 5, 2021, Williamson asserted a claim to the Death Benefit by filling out a Claimant's Statement Form.  Dkt. No. 1-6.  She indicated therein to Primerica that she was Decedent's "fiancée," and that her child, non-party Stephen Williamson, was Decedent's "son."  *Id.*  Day-Jefferson, Fitzgerald, and Hubbard dispute both assertions.  Dkt. No. 19 ¶¶ 64,

---

of Material Facts, *see* Dkt. No. 55-3 ¶ 1; Dkt. No. 62-1 ¶ 1.  The Court has also considered the parties' other submissions and attached exhibits.  *See generally* Dkt. Nos. 55, 62, 65.

70.   More than a month later, on February 19, 2021, Day-Jefferson and Fitzgerald emailed Primerica to contest the validity of the designation of Williamson as sole beneficiary, alleging that the MCF and designation therein were fraudulent.  Dkt. No. 1 ¶ 18; Dkt. No. 1-7; Dkt. No. 19-4.

The only fact in dispute regarding the competing claims to the Death Benefit is whether Decedent's signature on the MCF is forged.  Dkt. No. 55-3 ¶¶ 2, 4; Dkt. No. 62-1 ¶¶ 2, 4.

### B.    The Instant Action and Motion

The Court's prior decision denying Cross-Defendant's and Cross-Claimants' motions for summary judgment, briefly summarized herein, addresses the prior procedural history in full.  *See* Dkt. No. 30 at 4-5.[2]   Cross-Defendant previously moved for summary judgment, claiming entitlement to the Policy's proceeds as its sole beneficiary, Dkt. No. 11, which the Court denied with prejudice because Cross-Defendant "conceded there is a triable 'question of [material] fact.'" Dkt. No. 30 at 11 (quoting Dkt. No. 11, ¶¶ 4-9).   Cross-Claimants also moved for summary judgment and claimed entitlement to the Policy's proceeds because they alleged the Cross-Defendant obtained her beneficiary designation through fraud.  Dkt. No. 20-5 at 2-5.  The Court denied this motion "without prejudice and with leave to renew after all parties have had a reasonable opportunity to conduct discovery."  Dkt. No. 30 at 12-13.

Following the Court's decision, Cross-Claimants have renewed their motion for summary judgment on the cross-claim for fraud against Cross-Defendant.  Dkt. No. 55.  In support of their Motion, Cross-Claimants submit a new expert report by their forensic document examiner, Mr. Curt Baggett, who concludes that "it is my professional expert opinion that it is highly likely that the questioned signature of Warren Jefferson was authored by Sandra Williamson."  Dkt. No. 55-

---

[2] Citations to docket entries, including deposition transcripts, utilize the pagination generated by CM/ECF, the Court's electronic filing system.

5 at 27 (the "2023 Baggett Report").[3]   The parties requested several extensions to file their

responses, Dkt. Nos. 58, 60, 63, which the Court[4] granted, Dkt. Nos. 59, 61, 64.   On December 28,

2023, Cross-Defendant filed her Opposition, arguing primarily that the Motion should be denied

because "[t]here is a genuine dispute as to a material fact . . . [whether] the decedent, Warren

Anthony Jefferson, sign[ed] the most recent insurance form."  Dkt. No. 62 at 1.[5]   In support of her

Opposition, Cross-Defendant submits an affidavit of a forensic document examiner, Mr. Khody

Detwiler, which criticizes and rebuts the conclusions reached in the 2023 Baggett Report.  Dkt. No.

62-2 at 2-21 (the "Detwiler Report").   On January 16, 2024, Cross-Claimants filed their Reply,

including a list of cases and an affidavit in support of the 2023 Baggett Report.   Dkt. No. 65.

## III.   STANDARD OF REVIEW

Summary judgment is properly granted only if, upon reviewing the evidence in the light

most favorable to the nonmovant, there is no genuine issue of material fact and the moving party

is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*,

477 U.S. 317, 322-23 (1986); *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993).   A court first

determines "whether the evidence presents a sufficient disagreement to require submission to a

[factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*

*v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).   "When analyzing a summary judgment

motion, the court 'cannot try issues of fact; it can only determine whether there are issues to be

---

[3] Mr. Baggett submitted a separate report in support of Cross-Claimants' first motion for summary judgment which concluded that the decedent's signature was likely forged, but did not identify Cross-Defendant and the likely forger.  Dkt. No. 19-1 (the "2021 Baggett Report").

[4] This matter was reassigned to the undersigned on January 18, 2023.  Dkt. No. 41.

[5] To the extent Cross-Defendant sought to dismiss Cross-Claimants' claim, attorney's fees, and other relief in the Opposition, these requests are not properly before the Court.  N.D.N.Y. L.R. 7.1(a)(1), (c).  To the extent Cross-Defendant sought to preclude Cross-Claimants' expert witness, *see* Dkt. No. 65 at 2-3, this request is not properly before the Court.  N.D.N.Y. L.R. 7.1(a)(2), (b).

tried.'" *Galeotti v. Cianbro Corp.*, No. 5:12-cv-00900 (MAD/TWD), 2013 WL 3207312, at *4 (N.D.N.Y. June 24, 2013) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36-37 (2d Cir. 1994)).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995) (citation omitted). To determine whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *accord Gibbs-Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir. 2002). A "material" fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir. 1997). A court should "grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative." *Schwimmer v. Kaladjian*, 988 F. Supp. 631, 638 (S.D.N.Y. 1997) (citing, *inter alia*, *Anderson*, 477 U.S. at 249-50).

When opposing summary judgment, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). A nonmoving party must present "specific facts showing that there is a genuine issue of material fact to be tried" and "cannot defeat the motion by relying on the allegations in [a] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb*

*v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citing, *inter alia*, Fed. R. Civ. P. 56(e)). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," then:

> [T]he court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).  Local Rule 56.1(a) also requires "[a]ny motion for summary judgment [to] contain a separate Statement of Material Facts[,]" and warns that "[f]ailure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion." L.R. 56.1(a) (emphasis omitted).  However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted).

## IV.    DISCUSSION

### A.    New York State Fraud Claim

Under New York law,[6] the elements of fraud are: "representation of a material existing fact, falsity, scienter, deception and injury[.]" *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (N.Y. 1995).  In motions for summary judgment where the authenticity of a signature is contested, "identification of handwriting is to be determined by the trier of fact," and thus, "an assertion that a signature was forged cannot ordinarily be resolved on summary judgment." *Feehan v. Feehan*, No. 09 Civ. 7016 (DAB) (THK), 2010 WL 3734082, at *9 (S.D.N.Y. July 26, 2010), *report and recommendation adopted*, 2010 WL 3734079 (S.D.N.Y. Sept. 22, 2010)

---

[6] The Court applies New York law to adjudicate the cross-claim for fraud, as explained in the Court's prior decision regarding choice of law.  *See* Dkt. No. 30 at 6-8.

(quotations omitted) (collecting cases); *Metro. Life Ins. Co. v. Giscombe*, No. 19 CV 4463 (MKB) (CLP), 2022 WL 2467066, at *8-9 (E.D.N.Y. Jan. 21, 2022), *report and recommendation adopted*, 2022 WL 2704752 (E.D.N.Y. July 12, 2022) (denying summary judgment on the issue of forgery in light of "lack of expert testimony and affidavits from other individuals familiar with Decedent's handwriting[,]" and concluding that "the issue [sh]ould be up to the trier of fact to consider and is not an appropriate determination on a motion for summary judgment").

However, "[s]omething more than a bald assertion of forgery is required to create an issue of fact[,]" *TD Bank, N.A. v. Piccolo Mondo 21ˢᵗ Century, Inc.*, 98 A.D.3d 499, 500 (2d Dep't 2012), and "'[a]verments merely stating conclusions, of fact or of law, are insufficient' to 'defeat summary judgment.'" *Banco Popular N. Am. v. Victory Taxi Mgmt., Inc.*, 1 N.Y.3d 381, 384 (N.Y. 2004) (quoting *Mallad Constr. Corp. v. Cnty. Fed. Sav. & Loan Assn.*, 32 N.Y.2d 285, 290 (N.Y. 1973)).  Thus, a court may grant summary judgment finding that a signature is authentic if the "party contesting the signature's validity [does not] submit sufficient evidence to allow a reasonable juror to conclude that those arguments have merit[,]" *Feehan*, 2010 WL 3734082, at *9; *accord Hartford Life Ins. Co. v. Einhorn ex rel. Estate of Mehring*, 452 F. Supp. 2d 126, 131-32 (E.D.N.Y. 2006) (granting summary judgment where nonmovant's only evidence disputing the authenticity of the decedent's signature on a beneficiary change form was a *pro se* defendant's unsworn lay letter challenging movant's handwriting expert), or where a nonmovant asserting authenticity "ha[d] not offered competent or probative evidence to contest the testimony of [movants] with respect to the forge[ry]" and did not challenge "the testimony of [movant's] handwriting expert and forensic document examiner[,]" *Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*, No. 03 Civ. 0015 RWS, 2004 WL 1406076, at *5 (S.D.N.Y. June 23, 2004).

In deciding whether to grant or deny a motion for summary judgment in the context of

allegations of forgery, "while expert testimony is not required to create an issue of fact regarding signature authenticity, [] courts have given significant weight to expert testimony, or the lack thereof." *Giscombe*, 2022 WL 2467066, at *8 (citations omitted); *Ladner v. City of New York*, 20 F. Supp. 2d 509, 516-17 (E.D.N.Y. 1998), *aff'd*, 181 F.3d 83 (2d Cir. 1999) (granting summary judgment where a nonmovant did not provide evidence of a triable issue of fact by "not proffer[ing] a handwriting expert, but merely express[ing] their own lay opinions" that certain signatures were identical). In cases "where an expert is used to counter the moving party's *prima facie* proof, the expert opinion must be in admissible form and state with reasonable professional certainty" an opinion as to the contested signature's authenticity. *Banco Popular*, 1 N.Y.3d at 383-84 (affirming grant of summary judgment finding a signature authentic where the nonmovant's expert affidavit was "unsworn and inadmissible"). Courts have denied motions for summary judgment where a nonmovant asserting that a signature is authentic submits expert evidence which sufficiently raises triable issues of fact. *See, e.g.*, *Lewis v. DiMaggio*, 151 A.D.3d 1296, 1298-99 (3d Dep't 2017) (reversing grant of summary judgment where the trial court had disregarded a nonmovant's forensic document examiner's affidavit which the appellate division found to meet "th[e] minimal standard" discussed in *Banco Popular* to establish "triable issues of fraud");[7] *Lombardo v. United Techs. Corp.*, No. 3:95CV02353 (WWE), 1997 WL 289669, at *2 (D. Conn. May 7, 1997) (denying summary judgment where the movant filed an affidavit denying signing the relevant document and an expert opinion that her signature was forged); *Kluge v. Fugazy*, 739 F. Supp. 939, 940 (S.D.N.Y. 1990) (denying summary judgment despite purported credible evidence of a

---

[7] Notably, the examiner's affidavit compared DiMaggio's signatures with the decedent's signature in question, but did not provide analysis with respect to the other movant, Iocovozzi, and the appellate division accordingly affirmed summary judgment for Iocovozzi, as "neither the examiner's affidavit nor the other evidence in the record . . . adequately raise[d] any issue of fraud committed by Iocovozzi." *DiMaggio*, 151 A.D.3d at 1298-99 (internal citations omitted).

forgery because "the Court [did] not know if that evidence [wa]s conclusive . . . in light of the conflicting statements" asserting authenticity "from [the nonmovant] and his expert"). As a final observation, the Court notes that in cases such as this, motions for summary judgment are far more often brought by claimants asserting a signature's authenticity rather than claimants asserting forgery, and in light of this, there is a dearth of authoritative case law that squares with the Motion.

### B.    Application to the Instant Motion

Cross-Claimants and Cross-Defendant agree that the only remaining issue in dispute is the "authenticity of Decedent's signature on the [MCF], where Decedent appeared to designate Williamson, his 'caregiver,' as sole primary beneficiary of the $150,000 death benefit[.]" Dkt. No. 55-3 ¶ 2; *see* Dkt. No. 62-1 ¶ 2.[8]  In the Motion, Cross-Claimants seek summary judgment against Williamson given "the absence of any proof by Ms. Williamson that she directly observed the decedent sign the [MCF] . . . combined with the fact that she has no expert witness to give an opinion that it was authored by the decedent[.]" Dkt. No. 55-4 at 4.  However, the Opposition provides that "Williamson swears that she witnessed the decedent, Warren Anthony Jefferson, sign the form in question[,]" Dkt. No. 62 at 2, and includes the Detwiler Report, Dkt. No. 62-2.  The Detwiler Report identifies "deficiencies and shortcomings on the overall reliability and validity of [Mr. Baggett's] conclusions" that the signature was forged and that it was "highly likely" that Sandra Williamson forged the signature. *Id.* at 17-21.

First, Mr. Detwiler evaluated the 2021 Baggett Report and criticized the fact that Mr. Baggett conducted his scientific comparison between the questioned writing and known writings under a microscope, when "[m]easurements of this nature are not generally employed by qualified

---

[8] In her Opposition, Cross-Defendant submitted the same Statement of Material Facts filed by Cross-Claimants in support of the Motion, and did not respond to, refute, or alter the factual assertions in any way. *Compare* Dkt. No. 55-3, *with* Dkt. No. 62-1.

examiners as a sole source of establishing conclusions because . . . every individual's writing will vary from execution to execution." *Id.* at 8-10 (referring to Dkt. No. 19-1). He states that this is particularly problematic given the fact that the documents Mr. Baggett examined were photocopies that were reduced in size, stating "a genuine US passport measures 125mm x 175mm when opened . . . [whereas t]he submitted images of Mr. Jefferson's passport measure 107mm x 145mm[.]" *Id.* at 9. Further, he notes that Mr. Baggett "only relied upon four (4) known exemplar signatures for comparison that spanned a total of 13 years[,]" and "fail[ed] to consider Mr. Jefferson's physical condition at the time of signing, which is a significant factor [that] must be considered in such examinations." *Id.* at 12. Mr. Detwiler concludes that "[g]iven the considerable limitations at hand, the most appropriate and accurate conclusion to be drawn from the analysis of the current evidence would be inconclusive." *Id.* at 15-16.

As for the 2023 Baggett Report, Mr. Detwiler notes that Mr. Baggett's conclusion that the questioned signature was authored by Sandra Williamson is not definitive, because he used the term "highly likely" to qualify his findings. *Id.* at 17 (quoting Dkt. No. 55-5 at 26). Mr. Detwiler cites industry standards among forensic document examiners that the term "highly likely" points to the fact that some "critical feature or quality is missing so that an identification is not in order[.]" *Id.* He notes that "[s]ince the conclusion reached by Mr. Baggett is not definitive, it can be inferred that there must be some area of disagreement between the questioned and known writings." *Id.* Further, Mr. Detwiler reaches different conclusions for each of the ten similarities indicated in the 2023 Baggett Report between decedent's signatures and Ms. Williamson's signatures using the same industry standards. *Id.* at 18-20. For example, where Mr. Baggett found a similarity between each signature's capital W, Dkt. No. 55-5 at 29, ¶ 3, Mr. Detwiler notes "clear differences in the formation of the staff, troughs, and centers[,]" Dkt. No. 62-2 at 19, ¶ 3. Again, where Mr. Baggett

noted a match in physical height between letters, Dkt. No. 55-5 at 29, ¶ 5, Mr. Detwiler finds that "this comparison involve[d] a contrast between print and script writing, as well as distinct letter formations. Therefore, it lacks comparative merit and does not support any meaningful similarity between the two [signatures,]" Dkt. No. 62-2 at 19, ¶ 5.[9] Ultimately, the Detwiler Report concludes that in "[c]onsidering the evidence presented and analyzed by Mr. Baggett, it is clear that the opinions expressed in both of his reports are unsubstantiated, lacking proper support, and are fundamentally flawed." *Id*. at 21 (referring to Dkt. Nos. 19-1, 55-5).

The Court (Kahn, J.) previously denied Cross-Claimants' motion for summary judgment because they "failed to show they are entitled to summary judgment on the 'falsity' element" of fraud due to the unresolved issue of the signature's authenticity. Dkt. No. 30 at 13. This Court similarly finds the issue of the signature's authenticity remains unresolved, as Cross-Defendant has sufficiently challenged Cross-Claimants' evidence to create a triable issue of material fact with respect to fraud under New York law. *See*, *e.g.*, *Giscombe*, 2022 WL 2467066, at *8-9 (finding "that whether the signature of the Decedent is or is not a forgery raises an issue of fact that makes it inappropriate to grant summary judgment at this time"); *Lombardo*, 1997 WL 289669, at *2 (finding that "the court is unable to hold that there is no genuine issue of material fact as to whether Mrs. Lombardo's signature was a forgery" "in light of Mrs. Lombardo's affidavit and the expert's opinion that this is not her signature"); *Fugazy*, 739 F. Supp. at 940 (finding "genuine issues of fact material to whether" a signature in dispute was forged). Cross-Defendant's Opposition offers probative evidence, including Cross-Defendant's sworn statement that decedent signed the MCF, Dkt. No. 62 at 2, and an affidavit from forensic document examiner, Khody Detwiler. Dkt. No. 62-

---

[9] The Detwiler Report also noted several instances where Mr. Baggett compared writings that were not part of the actual signatures in question, instead analyzing printed words and numbers. *See* Dkt. No. 62-2 at 19-20.

2.  The Detwiler Report is in admissible form, and concludes with reasonable professional certainty that Cross-Claimants' evidence proffered in the 2021 and 2023 Baggett Reports is unreliable and that in his opinion, analysis of the current evidence yields "inconclusive" results as to the signature's authenticity.  Dkt. No. 62-2 at 15-16.  Taken together,  this showing meets Cross-Defendant's burden.  *See, e.g.*, *Banco Popular*, 1 N.Y.3d at 384; *DiMaggio*, 151 A.D.3d at 1298-99.[10]  Accordingly, Cross-Claimants' Motion is denied as to the claim of fraud against Cross-Defendant under New York law.

## V.   CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Cross-Claimants' motion for summary judgment, Dkt. No. 55, is **DENIED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 9, 2024
          Albany, New York

Anne M. Nardacci
U.S. District Judge

---

[10] Notably, in light of the evidence proffered by the Cross-Defendant, the instant Motion is distinguishable from cases in which courts have granted summary judgment for lack of evidence by nonmovants, such as where nonmovants did not challenge the opposing party's handwriting expert, *see, e.g.*, *Bangkok Crafts Corp.*, at *5, or where the nonmovant only provided an unsworn personal letter to support their position, *see, e.g.*, *Hartford Life Ins. Co.*, at 131-32.